UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIAM R. WIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CV-115-PLR-CCS |
| | ) | |
| KIMBERLY-CLARK CORPORATION, | ) | |
| KENDRA PRESLEY, and | ) | |
| JAMEY GRIZZLE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff, William R. Wiggins, has brought this action against his employer, Kimberly-Clark Corporation, alleging multiple tort claims under Tennessee law. All claims brought by Wiggins arise from a single incident – drug and alcohol testing of Wiggins, pursuant to Kimberly-Clarks' "for cause" testing policy on August 16, 2011, after his supervisor received a report that co-workers detected the smell of alcohol on Wiggins at work.

This matter is before the court on Defendant Kimberly-Clark's (1) objections to the Magistrate Judge's Memorandum and Order [R. 44]; (2) motion to dismiss [R. 46]; motion for summary judgment [R. 55]; Jamey Grizzle's motion to dismiss [R. 47]; and (5) Kendra Presley's motion to dismiss [R. 48].

# I.  Background

Wiggins is an employee of Kimberly-Clark's mill located in Loudon, Tennessee. Stacie Cole was the Team Coordinator (TC) for Wiggins' team, and Kimberly Samry was the Operations Team Leader (OTL).

Kimberly-Clark has a Code of Conduct that applies to all employees and sets forth guidelines and expectations for maintaining a safe and respectful workplace for its employees.  Among other things, the Code of Conduct sets forth Kimberly-Clark's commitment to maintaining a drug-free workplace by prohibiting employees from using, selling, or being under the influence of alcohol or nonprescribed or illegal drugs in the workplace, and informing all employees that they are subject to testing if they appear to be under the influence at work, or if Kimberly-Clark has reason to believe an employee has violated its policy.

The Code of Conduct provides multiple avenues for employees to report violations and allows employees to share concerns anonymously, to encourage employees to report violations to someone with whom they feel comfortable, without fear of retaliation. Kimberly-Clark recognizes that employees may not always feel comfortable reporting a violation to a specific person; or that there may be a need to report a violation outside the employee's supervisory structure because of a supervisor's involvement in the violation or failure to take appropriate action regarding a violation.

Kimberly-Clark employees complete training on the Code of Conduct every year. Wiggins was familiar with and had reviewed the Code of Conduct on an annual basis, and was aware of the provision allowing employees to make anonymous reports of Code

2

of Conduct violations. In addition, the Loudon mill has an alcohol and drug testing procedure that has been in place since 2007. The Loudon mill's alcohol and drug testing procedure is intended to be used to determine if a "for cause" test of an employee is warranted, *i.e.*, if an employee appears to be under the influence of alcohol or drugs while at work. Implementation and enforcement of the drug and alcohol policies are necessary to maintain a safe working environment, particularly in the mill, where an employee could endanger him/herself or others if operating mill machinery while intoxicated.

On August 16, 2011, Wiggins' team began its shift at 7:00 p.m. Kendra Presley and Jamey Grizzle were members of Wiggins' team. During the pre-shift meeting, Grizzle smelled alcohol when he walked by Wiggins. On the way out to the mill floor to beginning working, Presley stopped to ask Wiggins a question. During that conversation, Presley also smelled alcohol on Wiggins. Presley told Grizzle that she had smelled alcohol on Wiggins, but did not feel comfortable reporting Wiggins to TC Cole, and she was concerned about Wiggins' safety. Presley did not feel comfortable reporting to Cole because she thought Cole might not handle the report properly because Cole and Wiggins were friends. After his conversation with Presley, Grizzle left the floor and contacted OTL Samry, and told her about Wiggins smelling of alcohol.

Samry was home at the time Grizzle called her, so she headed to the mill after speaking with him. Samry called Sue Schultz, the mill Occupational Health Nurse, and asked Schultz to walk her through the drug and alcohol testing policy. Schultz told Samry where to find a prepared packet with all the documents she would need to

determine if testing was warranted and, if needed, to proceed with testing in compliance with Kimberly-Clark's policy.

When Samry arrived at the mill, she went directly to the shipping department to speak with Cole. She spoke with Cole privately and then asked Cole to retrieve Wiggings from the floor and bring him to the office. When Cole brought Wiggins to the office, Samry explained to him that she had received a report from two of his co-workers that he smelled of alcohol. Wiggins volunteered to Samry that he had a beer early that day before reporting to work. Based on Wiggins' admission, and the report of two co-workers that Wiggins smelled of alcohol, Samry determined that "for cause" testing was warranted.

Wiggins signed the form consenting to providing a breath, urine, and/or blood sample to be tested for drugs, controlled substances, and/or alcohol. Wiggins asserts Samry told him that if he did not sign the consent form, he would be fired, so he signed the form under duress.

Samry and Cole transported Wiggins to the designated local testing facility, Ft. Loudon Medical Center. Wiggins first underwent a breath alcohol test. The results of the breath alcohol test were 0.0, which was displayed to Wiggins, Cole, and Samry. Per the certified technician who completed Wiggins' breath alcohol testing, it is possible for the smell of alcohol to still be detected on an individual, even if the individual has had a negative result on the breath alcohol test.

After Wiggins' breach alcohol test was negative, before proceeding with the drug test, Samry contacted Schultz to confirm that Wiggins was supposed to undergo both

4

tests.  Schultz confirmed that Kimberly-Clark's drug and alcohol policy requires that an employee undergoing "for cause" testing be tested for both alcohol and drugs.  Wiggins then provided a urine sample for drug screening.

The drug screen results are not immediately available.  Wiggins, Cole, and Samry then returned to the mill.  Per the drug and alcohol policy, Wiggins was not permitted to drive himself home, because Kimberly-Clark did not have all of the test results.  Samry confirmed with Schultz that Wiggins was not permitted to drive himself home, even though his breath alcohol test was negative. Wiggins called a friend and his father to come pick him up at the mill.  Pending the results of the drug screen, Wiggins was placed on administrative leave.  Wiggins' drug screen was negative, and as a result, his administrative leave was paid.  Wiggins returned to work on August 22, 2011.

Upon his return to work, Wiggins asked the mill manager and human resources manager if he could address his team at the pre-shift meeting.  Wiggins addressed his team at the end of the pre-shift meeting, telling them that he would never put himself or a team member at risk; that he was sorry a team member "thought" he or she smelled alcohol on him; that he was "pissed off" that his team member did not come to him to talk about it; and that he was "pissed off" that somebody had falsely accused him of coming to work under the influence.

Wiggins originally filed his Complaint in Loudon County Circuit Court on February 10, 2012, raising state law claims against Kimberly-Clark and an unidentified John Doe defendant.  Kimberly-Clark timely removed the case to this court, on the basis of diversity jurisdiction.

5

On October 12, 2012, the court dismissed Wiggins' claims for breach of contract – Counts I through VII [R. 14]. The only remaining claims were for: (1) defamation against John Doe – Count VIII; (2) outrageous conduct against Kimberly-Clark and John Doe – Count IX; (3) false imprisonment against Kimberly-Clark and Joe Doe – Count X; (4) invasion of privacy against Kimberly-Clark and Joe Doe – Count XI; and (5) misrepresentation against Kimberly-Clark and John Doe – Count XI (*sic*).

On February 5, 2014, Wiggins filed a motion to amend his complaint to add two new defendants – Kendra Presley and Jamey Grizzle – in place of the John Doe defendant. Wiggins also sought to amend his complaint to allege the following claims against Presley and Grizzle: defamation, intentional and negligent infliction of emotional distress, invasion of privacy, and misrepresentation. Wiggins dropped his claim of false imprisonment against any John Doe defendant. He also alleged a new claim of negligence against Kimberly-Clark.

Wiggins contends that the conduct of Kimberly-Clark in administering the drug and alcohol testing constitutes intentional or negligent infliction of emotional distress. He alleges two types of invasion of privacy claims: (1) that Kimberly-Clark intrusively subjected him to a drug screen; and (2) defendants presented him in a false light by "presenting him as an employee who would endanger his co-workers by coming to work drunk." Wiggins' false imprisonment claim is based on the fact that he underwent drug and alcohol testing, was required to undergo drug testing after a negative breath alcohol test result, and was not permitted to drive himself home after the drug and alcohol testing on August 16, 2011. Wiggins' misrepresentation claim is based on his belief that Samry

6

and Cole did not follow every step of the Loudon mill drug and alcohol policy, including "management verification." Wiggins alleges that Samry bypassed the policy because she "never come over and physically observed [plaintiff]."

On March 24, 2014, the Magistrate Judge granted Wiggins' motion to amend his complaint to name Kendra Presley and Jamey Grizzle "as the John/Jane Doe originally named as an unknown party." [R. 40].

## II. Objection to Memorandum and Order

Kimberly-Clark objects to the Magistrate Judge's order granting Wiggins' motion to amend his complaint to add Kimberly Pressley and Jamie Grizzle as defendants in this action.

The review of decisions by magistrate judges is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The appropriate standard of review depends upon the nature of the matter ruled upon by the magistrate judge. For nondispositive motions, the decision of the magistrate judge is subject to a "clearly erroneous or contrary to law" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). If a motion ruled upon by the magistrate judge is dispositive, the review of the magistrate judge's decision is *de novo*. 28 U.S.C. §§ 636(b)(1)(B)-(C); Fed.R.Civ.P. 72(b)(3). Important here, the Sixth Circuit has held that a motion to realign parties, where the motion would either destroy or preserve diversity jurisdiction, is dispositive and subject to *de novo* review. *See U.S. Fidelity & Guaranty Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992). Since the addition of Presley and Grizzle would destroy diversity, and thus, the court's subject matter jurisdiction, the court

7

will construe the Magistrate Judge's Memorandum and Order granting Wiggins' motion to amend as a report and recommendation and review the ruling *de novo*.

Kimberly-Clark argues that Wiggins' motion to amend should be denied as futile, because the proposed amendments seek to add new claims against new parties that are barred by the statute of limitations and do not relate back to the original filing date of the Complaint. Further, Kimberly-Clark argues that the proposed claims of misrepresentation against Presley and Grizzle, while not barred by a statute of limitations, should be denied as futile because they fail to state a claim.

Rule 15 of the Federal Rules of Civil Procedure directs that, where an amendment is not made as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). The court should freely give leave when justice so requires. *Id.* Denial of a motion may be appropriate where there is undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss. *Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir. 2005).

All of the claims Wiggins seeks to bring against Presley and Grizzle, aside from the claim of misrepresentation, are outside the applicable statute of limitations. Wiggins' claims arise from the events of August 16, 2011, and are subject to either a six-month or one-year statute of limitations.

8

Slander is subject to a six-month statute of limitations. Tenn. Code Ann. § 28-3-103. Libel is subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104. Intentional or negligent infliction of emotional distress claims are subject to a one-year statute of limitations. *See Leach v. Taylor,* 124 S.W.3d 87, 91 (Tenn. 2003); *Evans v. Walgreen Co.,* 813 F.Supp.2d 897, 938 (W.D.Tenn. 2011). Invasion of privacy is subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a).

Wiggins does not dispute that he added Presley and Grizzle after the statutes of limitations had expired, but he argues that the amendment relates back to his original Complaint under Rule 15.

Rule 15(c) says that an amendment that changes a defendant but arises out of the same conduct relates back if the new defendant (1) received such notice of the action that defendant will not be prejudiced in defending on the merits; and (2) knew or should have known that the action would have been brought against defendant, but for a mistake concerning the proper party's identity. A defendant's actual knowledge of the complaint and constructive knowledge that the plaintiff made a mistake in failing to name defendant must occur within 120 days of the filing of the original complaint. *See* Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 15(c).

Wiggins asserts that the scheduling order in this case required that any amendments to the Complaint or joinder of parties be filed no later than February 5, 2014. His motion filed on February 5, 2014, is therefore, timely. He further states that it is not unfair to allow Presley and Grizzle to now be brought into this lawsuit because they should have known they would be brought in because they were still employed at

9

Kimberly-Clark when the lawsuit was filed and served; and they are now represented by Kimberly-Clark's counsel. Thus, there is no unfair surprise to the defendants.

That may be true, but Wiggins' argument overlooks another prerequisite of Rule 15(c) – that Wiggins made a "mistake concerning the proper party's identity." The problem with the amended complaint is that adding new, previously unknown defendants in place of "John Doe" defendants is "considered a change in parties, not a mere substitution of parties," and such amendments do not satisfy the "mistaken identity" requirements of Rule 15(c). *Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir. 1996). The rule allows relation back for the mistaken identification of defendants, not for defendants to be named later though "John Doe," or other missing appellations. This holding is consistent with the holdings of other circuits on this issue. *See Wilson v. U.S. Gov't,* 23 F.3d 559, 563 (1st Cir. 1994); *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2nd Cir. 1995); *Locklear v. Bergman & Beving AB,* 457 F.3d 363, 367 (4th Cir. 2006); *Jacobsen v. Osborne,* 133 F.3d 315, 320 (5th Cir. 1998); *Baskin v. City of Des Plaines,* 138 F.3d 701, 704 (7th Cir. 1998); *Foulk v. Charrier,* 262 F.3d 687, 696 (8th Cir. 2001); *Garrett v. Fleming,* 362 F.3d 692, 696 (10th Cir. 2004); *Wayne v. Jarvis,* 197 F.3d 1098, 1103 (11th Cir. 1999).

Here, Wiggins did not make a mistake about the identity of the parties he intended to sue; he did not know who they were and apparently did not find out within the limitations periods. It appears from the record that Wiggins did not raise this issue with the court until a telephonic conference with the Magistrate Judge in November of 2013. His motion to amend to add Presley and Grizzle was not filed until February 5, 2014.

10

"The relation-back protections of Rule 15(c) were not designed to correct that kind of problem." *Smith v. City of Akron,* 476 Fed.Appx. 67, 69 (6th Cir. 2012); *see also In Re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449-50 (6th Cir. 1991); *Cox,* 75 F.3d at 240; *Moore v. Tennessee,* 267 Fed.Appx. 450, 455 (6th Cir. 2008). Because Wiggins cannot establish the "mistake" requirement of Rule 15, his proposed Amended Complaint adding Presley and Grizzle does not relate back to the filing of his original Complaint. The statute of limitations for these claims expired on August 16, 2012, but Wiggins did not seek to amend his complaint until February 5, 2014. Accordingly, the court finds Wiggins' claims for slander, libel, intentional and negligent infliction of emotional distress, as well as invasion of privacy are time-barred, and permitting amendment of the Complaint to add those claims would be futile. Therefore, his motion to amend to add claims for slander, libel, invasion of privacy, intentional and negligent infliction of emotional distress against Presley and Grizzle is **DENIED.**

This leaves Wiggins' claim of misrepresentation against Presley and Grizzle. Kimberly-Clark does not dispute that this claim falls within the applicable statute of limitations. Rather, Kimberly-Clark argues that Wiggins has failed to state a claim upon relief can be granted. To recover for intentional misrepresentation, Wiggins must show: (1) that the defendants made a representation of a present or past facts; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendants either knew that the representation was false or did not believe it to be true, or that the defendants made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the

representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation. *Hodge v. Craig,* 382 S.W.3d 325, 343 (Tenn. 2012).

Tennessee has adopted the approach of the Restatement (Second) of Torts as to negligent representation, which provides:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1); *Hodge,* 382 S.W.2d at 344-45.

Wiggins proposed Amended Complaint states that "Defendants" are liable to him for misrepresentation; however, there are no factual allegations to support this claim against Presley or Grizzle. Count VI of the proposed Amended Complaint states only that "Kimberly-Clark represented to Plaintiff . . . that its alcohol, drug, and Code of Conduct policies would be enforced and followed to protect their safety. . . Plaintiff relied on these representations to his detriment." Wiggins does not state that Presley or Grizzle made *any* representation to him upon which he justifiably relied. The court finds that because Wiggins has not made any factual allegations to support a claim of misrepresentation by Presley or Grizzle, he fails to state a claim upon which relief may be granted. Therefore, his motion to amend to add a claim of misrepresentation against Presley and Grizzle is **DENIED.**

### III. Kimberly-Clark's Motions to Dismiss and for Summary Judgment[1]

Kimberly-Clark moves for dismissal of all remaining counts in Wiggins' Amended Complaint pursuant to Rule 12(b)(6) and Rule 56, Federal Rules of Civil Procedure.

A motion to dismiss under Rule 12(b)(6), requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of plaintiff's claims that would entitle plaintiff to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir. 1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). The complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Id.*

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist.

---

[1] Because the court has sustained defendants' objections to the Magistrate Judge's Memorandum and Order allowing Wiggins to amend his Complaint to add Grizzle and Presley as defendants in this action, their motions to dismiss are moot and will not be addressed by the court.

*Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## IV.  Exclusivity Provision of Tennessee's Workers' Compensation Law

Kimberly-Clark argues that the exclusivity provision of Tennessee's workers' compensation law bars Wiggins' claims against Kimberly-Clark.  In support of its argument, Kimberly-Clark states that all of Wiggins' remaining claims in this case are tort actions seeking redress for personal injury to him, and these claims arise out of his employment; therefore, the claims are barred by Tennessee's workers' compensation law.

Tennessee's workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury.  *Valencia v. Freeland & Lemm Contr. Co.,* 108 S.W.3d 239, 242 (Tenn. 2003).  The only exception to this exclusivity provision is "for intentional torts committed by an employer against an employee."  *Id.*  However, the employee cannot sustain a tort action against the employer under the intentional tort exception unless the employee can prove the employer acted with "actual intent" to injure.  *Id.* at 240.  In the absence of "actual intent," the plaintiff is limited to the workers' compensation remedies.  *Id.*  In sum, the provisions of the workers' compensation statute are the exclusive remedy for employees to obtain relief from employers for injuries occurring in the course and scope of their employment, unless "actual intent" to injure has been established.

Tennessee case law establishes that the existence of defendant's actual intent to injure, not the nature of the tort, is determinative of whether the exception to the exclusive remedy provision applies.  *Coltraine v. Fluor Daniel Facility Servs. Co.,* 1994 WL 279964 at *4 (Tenn.Ct.App. 1994).  In the absence of an actual intent to injure within

15

the meaning of the intentional tort exception, the plaintiff is limited to his workers' compensation remedies. *Valencia,* 108 S.W.3d at 240.

Wiggins argues that in cases involving intentional torts committed by an employer against an employee, the exclusivity provision does not apply, citing *Doe v. Walgreens Co.,* 2010 WL 4823212 (Tenn.Ct.App. 2010). Wiggins' reliance on *Doe* is misplaced. In Doe, an employee of Walgreens filed numerous claims against her employer after her co-workers used the pharmacy's secure database to access her prescription records and then informed her fiancé and others that she was HIV-positive. Id. at *2. Walgreens filed a motion to dismiss, arguing that her exclusive remedy was a workers' compensation claim. The court found that the employee's complaint alleged that her co-workers "deliberately" accessed her records "without medical or legal justification, and without it being job related or a business necessity." Id. Based upon these allegations, the court found that it was "reasonable to infer that [the co-workers' deliberate acts] were made with the actual intent to injure" the plaintiff. Id. at *9.

*Doe* is easily distinguishable from the instant case. First, the Tennessee Court of Appeals concluded that the plaintiff's causes of action did not arise from the plaintiff's status as an "employee" of Walgreens, but instead arose from the plaintiff's status as a "customer" of Walgreens. Because Doe's claims did not involve injuries incurred in the course and scope of her employment, the exclusivity bar was not applicable. *Id.* at *10-11. There is no dispute in this case, however, that Wiggins' injuries occurred during and because of his employment with Kimberly-Clark; thus, *Doe* is inapplicable to his claims.

16

Second, there are no allegations that the injurious acts were undertaken "without it being job related or a business necessity," and there are no allegations giving rise to a reasonable inference that Kimberly-Clark actually intended to injure Wiggins. The Code of Conduct sets forth Kimberly-Clark's commitment to maintaining a drug free workplace, and states that employees are subject to testing if they appear to be under the influence at work, or if Kimberly-Clark has reason to believe an employee has violated the policy. Accordingly, Kimberly-Clark had ample justification for its actions – the safety of Wiggins and Kimberly-Clark's employees, where an employee could endanger him/herself or others, if operating mill machinery while intoxicated.

Wiggins' Amended Complaint contains no allegations of "actual intent" to injure by Kimberly-Clark. Merely alleging "actual intent" is not enough; there must be alleged specific facts constituting an actual intent to bring about the injury." *Rodgers v. GCA Servs. Group, Inc.,* 2013 WL 543828 at *7 (Tenn.Ct.App. 2013). Tennessee courts have dismissed claims similar to those raised by Wiggins as barred by the workers' compensation exclusivity provision. *See Mays v. Int'l Mill Servs. Inc.,* 2006 WL 208874 at *4 (W.D.Tenn. 2006) (barring negligent infliction of emotional distress claim); *Valencia*, 108 S.W.3d at 241 (barring intentional misrepresentation, negligence, and assault claims); *Federated Rural Elec. Ins. Exch. v. Hill,* 2007 WL 907717 at *9 (Tenn.Ct.App. 2007) (barring intentional infliction of emotional distress claim); *Coltraine,* 1994 WL 279964 at *3-4 (barring misrepresentation claim). In the absence of an actual intent to injure within the meaning of the intentional tort exception, Wiggins is limited to remedies under the workers' compensation statutes. Because his Amended

Complaint contains no facts demonstrating an actual intent to injure, the court finds that Kimberly-Clark is entitled to summary judgment on all of his remaining tort claims.

## V. Conclusion

In light of the foregoing discussion, the following action is taken:

1.      Defendants' objections [R. 44] to the Magistrate Judge's Memorandum and Order [R.40] are **SUSTAINED** to the extent that all claims brought by Wiggins against Presley and Grizzle are **DISMISSED, with prejudice.**[2]

2.      Kimberly-Clark's motions to dismiss and for summary judgment [R. 46, 55] are **GRANTED**.    All claims asserted by Wiggins against Kimberly-Clark are **DISMISSED, with prejudice.**

3.      Jamie Grizzle's motion to dismiss [R. 47] is **DENIED as moot.**

4.      Kendra Presley's motion to dismiss [R. 48] is **DENIED as moot.**

Enter:

_____
UNITED STATES DISTRICT JUDGE

---

[2] Kimberly-Clark did not oppose the Magistrate Judge's Memorandum and Order to the extent it (1) granted Wiggins' amendment eliminating any claim of false imprisonment against the "John Doe" defendant, (2) granted Wiggins' amendment adding a claim of negligence against Kimberly-Clark, and (3) extended the time for filing dispositive motions.